IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RUBEN AGUILAR | § | |
| | § | |
| v. | § | C.A. NO. C-10-349 |
| | § | |
| MICHAEL J. ASTRUE | § | |

**MEMORANDUM AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Ruben Aguilar brought this action on November 1, 2010, seeking review of the Commissioner's final decision that he is not disabled and, therefore, not entitled to supplemental security income. (D.E. 1). On June 3, 2011, Defendant filed a motion for summary judgment. (D.E. 14). Plaintiff filed a motion for summary judgment on June 13, 2011. (D.E. 15). On July 11, 2011, the parties filed responses to the motions. (D.E. 16, 17). For the reasons that follow, it is respectfully recommended that Plaintiff's motion for summary judgment be granted in part and denied in part, Defendant's motion for summary judgment be granted in part and denied in part, and the action remanded for further proceedings.

## I. **JURISDICTION**

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).

## II.  BACKGROUND

On June 26, 2007, at the age of forty-seven, Plaintiff filed a claim with the Social Security Administration for supplemental security income, alleging a disability period beginning July 1, 2004.  Tr. 100-02.  The claim was denied on October 30, 2007, Tr. 51-55, and his appeal was denied on March 7, 2008.  Tr. 56-58.  He requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 9, 2008.  Tr. 14-34.  On May 13, 2009, the ALJ issued a decision denying benefits.  Tr. 40-49.  The Social Security Administration denied Plaintiff's request to review the ALJ's decision, Tr. 1-3, and, on November 1, 2010, he filed this action.  (D.E. 1).

### A.    Plaintiff's Medical Records.

Plaintiff's alleged impairments consist of a deteriorating hip, loss of vision in his right eye, sleep apnea, back pain, obesity, depression, and diabetes.  Tr. 42, 112.

### 1.    Plaintiff's hip.

On February 9, 2007, Dr. Rodney D. Kidd diagnosed Plaintiff with left hip pain, but found no fracture, misalignment, or acute bony abnormality.  Tr. 274.  A doctor with the Hector P. Garcia Family Practice also diagnosed him with hip pain on March 1, 2007.  Tr. 240.  On June 4, 2007, Dr. Kidd reiterated the diagnosis of left hip pain.  Tr. 268.  He found that Plaintiff suffered from hip degeneration on

June 22, 2007, noting evidence of avascular necrosis, fracture, and joint effusion. Tr. 205-07.  On October 26, 2007, Dr. Moira Dolan diagnosed Plaintiff with mild degenerative joint disease.  Tr. 35.  A doctor with the Hector P. Garcia Family Practice diagnosed him as suffering from hip pain on December 27, 2007.  Tr. 231.

On March 5, 2008, John B. Ferguson, a consultant for the Social Security Administration with a Ph.D., diagnosed Plaintiff with chronic pain in his left hip. Tr. 36.  He reiterated the diagnosis on March 25, 2008, noting that an MRI showed sizeable left hip joint effusion and remarking that there was evidence of avascular necrosis.  Tr. 284, 286.  On September 24, 2008, Dr. Ann K. Cox found Plaintiff to suffer from avascular necrosis and joint effusion, but detected no other abnormalities.  Tr. 321.  Dr. Derwyn M. Toups concluded that Plaintiff might suffer from early avascular necrosis on August 1, 2008.  Tr. 325.  On September 30, 2008, Dr. Jon T. Watson determined that there was evidence of degenerative joint disease in Plaintiff's hip.  Tr. 323.  On October 27, 2009, Dr. James G. Flournoy found avascular necrosis and osteoarthritis.  Tr. 333-34.  Dr. Lamar S. Collie recommended a total hip replacement on November 25, 2009.  Tr. 342.

### 2. Plaintiff's vision.

On March 23, 2007, a doctor with the Hector P. Garcia Family Practice diagnosed Plaintiff with cataracts.  Tr. 243.  Dr. John B. Sohocki II determined that he had diabetic cataracts on August 1, 2007.  Tr. 191.  On March 25, 2008, Dr.

Ferguson concurred and noted that surgery had been recommended.  Tr. 284, 287.

### 3. Plaintiff's sleep apnea.

On February 14, 2007, a doctor with the Hector P. Garcia Family Practice diagnosed Plaintiff with sleep apnea.  Tr. 248.  On October 26, 2007, Dr. Dolan issued the same diagnosis.  Tr. 35.  Dr. Salim R. Surani performed a sleep study on March 25, 2007 and concluded that Plaintiff suffered from severe obstructive sleep apnea.  Tr. 196-97.  He suggested that Plaintiff undergo a trial period with a continuous positive airway pressure machine and lose weight.  Tr. 197.  On March 25, 2008, Dr. Ferguson noted that Plaintiff required such a machine.  Tr. 286.

### 4. Plaintiff's back pain.

On October 3, 2007, Dr. Kidd found that Plaintiff suffered from mild degenerative dessication in his back.  Tr. 203.  Dr. Ravi J. Jhaveri noted on October 4, 2007 that Plaintiff had good preservation of the invertebral disk spaces and found no signs of fracture or dislocation.  Tr. 202.  A doctor with the Hector P. Garcia Family Practice diagnosed Plaintiff with chronic pain on January 10, 2008.  Tr. 229.  A doctor with the same practice indicated on January 21, 2008 that Plaintiff was taking cyclobenzaprine[1] and Lortab.[2]  Tr. 228.  On March 25, 2008,

---

[1] Cyclobenzaprine is "a compound structurally related to the tricyclic antidepressants used as a muscle relaxant."  Dorland's Illustrated Medical Dictionary 443 (29th ed. 2000) [hereinafter Dorland's].

[2] Lortab is a "trademark for a preparation of hydrocodone bitartrate."  Dorland's, at 1028. Hydrocodone bitartrate is "a semisynthetic derivative of codeine used as an antitussive."  Id. at

Dr. Ferguson examined an MRI and concluded that Plaintiff had mild degenerative disc dessication, but no spinal stenosis or disc protrusion.  Tr. 286.  On October 27, 2009, Dr. T. K. Chaudhuri found mild multilevel degenerative disc disease, but no compression fractures or destructive lesions.  Tr. 331.

### 5. Plaintiff's obesity.

On March 25, 2007, Dr. Salim R. Surani described Plaintiff as sixty-six inches and 183 pounds, and assessed him as having a body mass index of 29.5.  Tr. 196.  Dr. Linda Saenz characterized him on October 29, 2009 as sixty-six inches tall and 143.4 pounds.  Tr. 353.

### 6. Plaintiff's depression.

On forms signed by doctors with the Hector P. Garcia Family Practice on January 10, 2008 and January 21, 2008, Plaintiff was diagnosed as depressed.  Tr. 228-29.  On March 5, 2008, Dr. Ferguson affirmed the diagnosis.  Tr. 36.  Dr. K. Eric DuBois, a clinical psychologist with a Ph.D., examined Plaintiff on February 8, 2008 and concluded that he suffered from major depressive order, single episode, moderate.  Tr. 319.  His prognosis was "fair, provided that he resume taking an anti-depressant medication and ... receive[] psychotherapy."  Tr. 320.  He regarded Plaintiff as capable of independently managing his funds.  Id.

On March 25, 2008, Dr. Ferguson found Plaintiff mildly limited in his daily

840.

living, as well as in his concentration, persistence or pace, moderately limited in social functioning, and suffering no episodes of extended decompensation.  Tr. 302.  He noted that Plaintiff was taking Lexapro[3] for his depression, but remarked that there was no history of psychiatric hospitalizations or significant psychiatric treatment.  Tr. 304.  Dr. Ferguson considered Plaintiff's thought processes logical and goal-oriented, deemed him to suffer from only mild deficit in memory, and gave him a Global Assessment of Functioning ("GAF") score of sixty.[4]  Id.  He found Plaintiff either not significantly limited or moderately limited in each specific category relating to his mental abilities.  Tr. 306.  Dr. Ferguson concluded that he could "understand, remember and carry out detailed but not complex instructions, make decisions, attend/concentrate for extended periods, accept instructions and respond appropriately to changes in a routine work setting."  Tr. 308.

On March 11, 2009, Dr. Yvette Reyes found Plaintiff depressed, but noted that he declined to consider a referral to mental health or substance abuse treatment centers.  Tr. 361-62.  Dr. Han Soe found Plaintiff depressed on May 11, 2009, but

---

[3]  "Lexapro ... is indicated for the acute and maintenance treatment of major depressive disorder."  Physician's Desk Reference 1161 (64th ed. 2009).

[4]  The GAF scale takes into account psychological, social, and occupational capabilities on a hypothetical spectrum of mental health.  An individual in the 51-60 range suffers "[m]oderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. no friends, unable to keep a job)."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

noted that when advised to seek therapy, Plaintiff responded, "with a smile," that "I just need to talk to [the] social security people."  Tr. 358.

### 7.     Plaintiff's diabetes.

There does not appear to be any medical discussion of Plaintiff's alleged diabetes in the record, and he makes no arguments in his briefs regarding the condition.

## B.     Plaintiff's Administrative Hearing.

On December 9, 2008, an administrative hearing was held to examine Plaintiff's claims.  Tr. 14-34.  At the hearing, he was represented by Vanessa Benavides, a non-attorney representative.  Tr. 14, 59.  Plaintiff testified, as well as George Decherd, a medical doctor, James Lazarus, a Ph.D. in psychology, and Donna Johnson, a vocational expert.  Tr. 14-34.

Dr. Decherd testified first, opining that Plaintiff did not meet or equal any of the listings.  Tr. 17.  Asked what limitations he would place on Plaintiff's working capacity as a result of his physical limitations, he stated that he thought he could lift forty to fifty pounds occasionally, as well as fifteen to twenty pounds frequently.  Tr. 19.  He did not believe any environmental restrictions were necessary, but did rule out ladders, ropes, scaffolds, unprotected heights, and dangerous machinery.  Id.  Dr. Decherd believed Plaintiff's ability to stand or walk would be limited to two to four hours a day, but that there was no limitation on his

ability to sit.  Tr. 20.  Dr. Lazarus testified next, agreeing that Plaintiff did not meet or equal any of the listings.  Tr. 21-22.

Under questioning by the ALJ, Plaintiff testified that he lived in a home with a friend, and was dependent on her to take care of the living space.  Tr. 23.  He described how much he struggled to get out of bed each morning.  Tr. 24.   Plaintiff testified that his declining eyesight and back disabled him from working as a barber, as he had earlier in his life.  Tr. 26.  He remarked that his recent eye surgery had improved his vision.  Tr. 27.  Although Plaintiff had a driver's license, he suggested that he usually depended on friends to drive him around, and that he was forced to lean on a shopping cart while walking around the grocery store.  Id. As a general matter, he indicated that he often found it necessary to use his walker. Tr. 28.  Plaintiff attempted to describe his pain, commenting that "[e]verything they've done for me so far has been mostly like a Band-Aid."  Id.  While questioning Plaintiff, Ms. Benavides elicited testimony that he saw his doctor between one and two times a month.  Id.  He recounted a doctor expressing surprise that he was able to walk at all.  Tr. 29.  Finally, Plaintiff mentioned that he expected to have surgery on his left hip in approximately six months.  Tr. 29.

The ALJ then asked Ms. Johnson the following hypothetical:

> I'd like you to assume an individual who's a younger-
> aged individual at all times in question, and alleges onset
> at age 44, currently 49; high school education plus barber
> college....  His past relevant work is pretty much limited

8

to ... [his work as a pipe] inspector....  I'm going to
restrict him to [lifting] ... 40 to 50 [pounds] occasionally,
15 to 20 frequently; stand and walk to only two to four
hours of an eight-hour day; no limits regarding the sitting
activities; but he also should not climb ladders, ropes, or
scaffolds, no work at unprotected heights or around
dangerous moving machinery.  His activities of daily
living would be a mild restriction; attention,
concentration, pace, mild; his social functioning would
be mild; and no episodes of decompensation.  Also,
occasional cane use ... [or other] [a]ssistive device....  I
ask you if he could perform any of his past relevant work
either as he performed it or as it normally would be
performed....

Tr. 30.  Ms. Johnson answered in the negative.  Id.  When the ALJ inquired into the

possibility of other types of work, she opined that he would be limited to sedentary

work and "some light benchwork jobs."  Id.  In terms of specific occupations, she

suggested assembler, optical goods worker, mail sorter, surveillance system

monitor, and telephone clerk, and then listed the approximate number of such jobs

available in Texas and nationwide.  Tr. 31-32.  Ms. Johnson indicated that most

employers in those fields would likely terminate a worker for taking more than two

absent days a month.  Tr. 32.  The ALJ asked about a worker who could perform

two hours of labor followed by fifteen minute breaks, and Ms. Johnson answered

that such a schedule would likely be allowed, but that an employee who needed

more regular breaks would almost certainly be fired.  Tr. 32-33.

**C.      The ALJ's Decision.**

On May 13, 2009, the ALJ issued an unfavorable decision for Plaintiff,
concluding that he had not suffered from a disability within the meaning of the
Social Security Act after June 26, 2007.  Tr. 40-49.  He began by finding that
Plaintiff had not engaged in substantial gainful activity after applying for benefits.
Tr. 42.  The ALJ then concluded that he suffered from several severe impairments,
listing them as lumbar degenerative changes, left hip avascular necrosis, diabetes
mellitus, right eye diabetic status post recent surgery, obstructive sleep apnea, and
obesity.  Id.

The ALJ next discounted the possibility that Plaintiff suffered from any
severe psychological impairments, determining that his depression "does not cause
more than minimal limitation in the claimant's ability to perform basic mental
work activities and is therefore nonsevere."  Tr. 43.  To bolster that finding, he
reviewed Plaintiff's capacities for daily living, social functioning, and
concentration, persistence or pace, determining that he suffered from only mild
limitations in each area.  Id.  The ALJ further noted that Plaintiff had experienced
no extended episodes of decompensation.  Id.  He observed that Plaintiff socialized
with people well and had only once received medication for depression, which he
promptly discontinued.  Id.  The ALJ reiterated Dr. DuBois' conclusion that
Plaintiff showed only a mild deficit in remote memory and no difficulties with

short-term memory, that he demonstrated adequate concentration and judgment, despite a lack of insight, and that his mental health appeared otherwise normal.  Id. He recited Dr. DuBois' diagnosis of depression, GAF of sixty, and prognosis of fair.  Id.  On the whole, the ALJ regarded Plaintiff's treatment history regarding depression as "brief and perfunctory."  Tr. 46.  In light of all the medical evidence regarding Plaintiff's mental health, the ALJ found him not to suffer from a severe limitation.  Id.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the listings.  Tr. 44.  Defending his conclusion, he emphasized the attention he gave to studying Plaintiff's spine, his joints, his apnea, his diabetes, and his eyesight.  Id.  The ALJ concluded that the evidence failed to demonstrate any compromised motor sensory or other physical abilities.  Id.  He specifically found that the eyesight issues had been resolved through surgery, and credited the medical testimony that Plaintiff did not meet or equal the listings.  Id.

The ALJ next calculated Plaintiff's residual functional capacity ("RFC"), finding him able to lift and carry forty-five to fifty pounds occasionally as well as ten to fifteen pounds frequently, but unable to climb ladders, ropes, or scaffolds or work around dangerous machinery or unprotected heights.  Id.  He further found him able to stand or walk two to four hours a day so long as he had an option to sit

or stand, able to sit eight hours a day, and required to use his cane occasionally.  Id. The ALJ concluded that Plaintiff suffered from mild limitations in his ability to perform activities of daily living, function socially, and maintain concentration, persistence, and pace.  Id.  As a general matter, he found the testimony of both medical witnesses "credible, persuasive, and well supported by the record."  Tr. 44, 46.

The ALJ dismissed Plaintiff's credibility insofar as his statements conflicted with the RFC calculation.  Tr. 45.  He emphasized that Plaintiff had "reported having very good results with Flexeril"[5] in treating his lumbar difficulties.  Tr. 45. The ALJ also underscored that Plaintiff "told Dr. DuBois that his doctor informed him that his back condition is not severe enough to warrant surgery."  Id.  As further evidence of Plaintiff's compromised credibility, he pointed to his daily habits, such as feeding and caring for two dogs and a parakeet, preparing his meals, watching television, attending to his personal needs, cooking breakfast, doing some laundry, going to church once a week, walking for exercise, moving about the house, and cleaning.  Tr. 47.  In addition, the ALJ suggested that Plaintiff's "apparent poor work history raises a question as to whether [his] continuing unemployment is actually due to medical impairments."  Id.

---

[5] Flexeril is a "trademark for a preparation of cyclobenzaprine hydrochloride." Dorland's, at 685.  Cyclobenzaprine hydrochloride is "a compound structurally related to the tricyclic antidepressants used as a muscle relaxant."  Id. at 443.

Turning to Plaintiff's hip problems, the ALJ noted that a June 2007 MRI found no worsening of the condition.  Tr. 46.  Additionally, he determined that sedentary work would ameliorate the amount of pain caused by the hip.  Id.  The ALJ stressed the fact that Plaintiff had not been going to physical therapy.  Id.

With respect to Plaintiff's diabetes, the ALJ considered the condition sufficiently accounted for by restricting him to work that does not require elevated heights or dangerous machinery.  Id.  The ALJ discussed Plaintiff's sleep apnea only briefly, discerning "[n]othing in the record [that] warrants further erosion of the ... occupation base due to" the condition.  Id.  On the subject of Plaintiff's eye problems, the ALJ reiterated his view of the positive effects of the eye surgery, particularly with respect to his driving ability.  Tr. 43.

The ALJ concurred with Ms. Johnson that Plaintiff was unable to perform any labor relevant to his most recent position as a pipe inspector.  Tr. 47.  However, reviewing the record as a whole, he concluded–citing Ms. Johnson's testimony–that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  Tr. 48.

### III.  LEGAL STANDARDS

**A.    Social Security Act Disability Benefits Requirements.**

The same law and regulations govern whether an individual is considered disabled and therefore entitled to benefits under either the disability insurance

benefits or the supplemental security income benefits provisions of the Social Security Act. Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989) (per curiam) (citations omitted). Specifically, the Social Security Act establishes that every individual who is insured for disability insurance benefits, has not attained the set retirement age, has filed an application for disability benefits, and is under a disability is entitled to receive disability benefits. 42 U.S.C. § 423(a)(1).

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further provides that a claimant is not disabled if that person can perform jobs available in the national economy:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

**B.      Social Security Administration Regulations And Rulings.**

To determine if an individual suffers from a disability, as defined by the Social Security Act, the Commissioner has promulgated regulations containing a five-step sequential process to be used by the Social Security Administration.  20 C.F.R. §§ 404.1520, 416.920.  A disability finding at any point in the five-step sequential process is conclusive and ends the analysis.  Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990) (citation omitted).

A claimant bears the burden of proof on the first four steps.  Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citation omitted).  The claimant must prove that: (1) he is not presently engaged in substantial gainful activity; (2) he suffers from an impairment or impairments that are severe; and that either (3) the impairment meets or equals an impairment listed in the appendix to the regulations; or (4) due to the claimant's RFC, the impairment prevents the claimant from doing any past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowling, 36 F.3d at 435; Villa, 895 F.2d at 1022.

The Fifth Circuit has held that "[t]he first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities."  Loza v. Apfel,

219 F.3d 378, 390 (5th Cir. 2000) (citations omitted). The Commissioner may find that a claimant's impairment fails to meet the significant limitation requirement of step two "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Id. at 391 (citation omitted).

Step three requires a claimant to prove that any of his impairments meet one or more of the impairments listed in the regulations, which include both physical and mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1. The criteria for determining the severity of the listed mental impairments include whether there is marked interference with activities of daily living, social functioning, concentration, persistence, or pace, and repeated episodes of decompensation. Id. at Pt. A § 12.00(C). The regulation defines "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Id. at Pt. A § 12.00(C)(4). The claimant must present evidence that the impairment is a long-term problem rather than a temporary set-back, but "does not have to show a 12 month period of impairment unmarred by any symptom-free interval." Singletary v. Bowen, 798 F.2d 818, 821 (5th Cir.

1986) (citations omitted).

Pursuant to the fourth step, a claimant who is unable to show that his impairment meets one of the listed impairments must show that he is unable to perform his past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  The claimant's RFC is taken into consideration to determine whether his impairments may cause physical and mental limitations that affect his ability to work.  20 C.F.R. §§ 404.1545, 416.945.  The RFC is the most a claimant can do despite any limitations caused by an impairment.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  All relevant evidence in the record, including medical and non-medical evidence, is taken into consideration by the Commissioner when making a determination of a claimant's RFC.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The Commissioner must consider all of a claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and non-medical evidence in the record.  Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996).  "[T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Id. at *2.  When a claimant's statements concerning symptoms and their associated limitations "are not substantiated by objective medical evidence, the adjudicator

17

must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Id.

The adjudicator's discussion of a claimant's RFC must thoroughly discuss and analyze the objective medical and other evidence in relation to the symptoms. SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). This discussion must include a resolution of any inconsistencies in the record, address a logical explanation of effects of the alleged symptoms on the individual's ability to work, contain a determination of why symptom-related functional limitations can or cannot be reasonably accepted as consistent with medical or non-medical evidence, and address any medical opinions contained in the record. Id.

If the claimant is able to meet his burden under the first four elements, the burden shifts to the Commissioner for the fifth. Bowling, 36 F.3d at 435. The fifth step requires the Commissioner to determine, based on the claimant's RFC, age, education, and work experience, if the claimant can make an adjustment to other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the claimant is disabled. Id.

**C.     Judicial Review Of The ALJ's Decision.**

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence

supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  See Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); accord Carey, 230 F.3d at 135.  The Fifth Circuit has described this burden as more than a scintilla, but less than a preponderance.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995) (citations omitted).  A finding of "no substantial evidence" occurs "only where there is a conspicuous absence of credible choices or no contrary medical evidence."  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam) (citation omitted).

If the Commissioner's findings are supported by substantial evidence, the Court must defer to the Commissioner and affirm the findings.  See Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002) (citation omitted).  In applying the substantial evidence standard, courts scrutinize the record to determine whether such evidence is present.  They do not, however, re-weigh the evidence, try the issues de novo, or substitute their judgment for that of the Commissioner.  Id.; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).  Factual conflicts that exist in the record are for the Commissioner and not the Court to resolve.  Masterson, 309 F.3d at 272.  It is incumbent upon the Court to look at the

evidence as a whole and take into account the following factors: "(1) objective

medical facts; (2) diagnoses and opinions of treating and examining physicians; (3)

claimant's subjective evidence of pain and disability; and (4) claimant's age,

education, and work history." Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)

(per curiam) (citation omitted).

## IV.  ANALYSIS

Defendant argues that summary judgment should be granted in his favor

because the ALJ's final decision that Plaintiff was not disabled was supported by

substantial evidence and because he followed the correct legal standards in

reaching his decision.  (D.E. 14).  Plaintiff seeks a remand because the ALJ's

decision is not supported by substantial evidence and because he used improper

legal standards.  (D.E. 15).

**A.     The ALJ Unreasonably Evaluated Plaintiff's Credibility.**

Defendant submits that the ALJ properly discounted Plaintiff's credibility as

a result of inconsistencies in his testimony, evidence that his conditions were not as

serious as alleged, and indications that he did not zealously pursue treatment.

(D.E. 14-1, at 6-7).  Plaintiff concedes that the ALJ had the authority to privilege

certain pieces of evidence over others in assessing his credibility, but urges that he

overstepped his bounds in ignoring or distorting evidence to arrive at the

credibility finding.  (D.E. 17, at 2-3).  Specifically, he contends that his credibility

20

was unfairly dismissed because the ALJ relied upon a misreading of his Social

Security questionnaires and other self-reported descriptions of his impairments.

(D.E. 15, at 16-17).  Defendant responds that the ALJ did not rely exclusively upon

the questionnaires for his credibility determination, but also took into account

Plaintiff's work and treatment histories.  (D.E. 16, at 8-10).

Social Security Ruling 96-7P describes how the Commissioner is to evaluate

subjective symptoms and to determine the credibility of an individual's statements.

See SSR 96-7P, 1996 WL 374186; see also Beck v. Barnhart, 205 F. App'x 207,

212-13 (5th Cir. 2006) (per curiam) (unpublished) (evaluating ALJ's decision

according to SSR 96-7p).  According to Ruling 96-7P, the ALJ must consider

whether there is an underlying medically determinable physical or mental

impairment that could reasonably be expected to produce the individual's pain or

other symptoms.  SSR 96-7P, 1996 WL 374186, at *1.  The ALJ must next

evaluate the intensity, persistence, and limiting effects of the individual's

symptoms to determine the extent to which the symptoms limit the individual's

abilities to do basic work activities.  Id.  If the individual's statements regarding the

intensity, persistence, or functionally limiting effects of pain or other symptoms are

not substantiated by objective medical evidence, the ALJ determines credibility by

considering the record as a whole, including medical signs and laboratory findings;

the individual's own statements about the symptoms; any statements or other

information provided by treating or examining physicians, psychologists, or other persons about the symptoms and how they affect the individual; and any other relevant evidence.  Id.

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence, Ruling 96-7P addresses seven factors, outlined in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c), which the ALJ should consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms, such as lying flat, standing for fifteen to twenty minutes every hour, or sleeping on a board; (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7P, 1996 WL 374186, at *3.

Finally, Ruling 96-7P addresses the standard for making credibility determinations.  Id. at *4.  An ALJ's credibility determination cannot be based on an intangible or intuitive notion about an individual.  Id.  The reasons for the

credibility finding must be grounded in the evidence and articulated in the determination or decision.  Id.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  Id.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that weight.  Id.  This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.  Id.

If an applicant's physician has prescribed treatment that can restore his ability to work, he must undergo the treatment in order to get benefits.  20 C.F.R. § 404.1530(a).  If he does not comply, he will not be found disabled.  20 C.F.R. § 404.1530(b).  Several circuits require an ALJ to make a finding that the treatment would restore the applicant's ability to work before denying benefits pursuant to this section.  See, e.g., Patterson v. Bowen, 799 F.2d 1455, 1460 (11th Cir. 1986) (collecting cases from Sixth, Seventh, Tenth and Eleventh Circuits); accord Quintanilla v. Astrue, 619 F. Supp. 2d 306, 321 (S.D. Tex. 2008).

As a central basis for the ALJ's adverse credibility determination, he pointed to Plaintiff's supposed self-reported daily habits, which the ALJ thought included

feeding and caring for two dogs and a parakeet, preparing his meals, watching television, attending to his personal needs, cooking breakfast, doing some laundry, going to church once a week, walking for exercise, moving about the house, and cleaning.  Tr. 47.  The ALJ was mistaken.  In characterizing the activities as it did, the decision substantially warped the answers on Plaintiff's questionnaire and the notes from the interview with Melissa Flores of Cordon Healthcare, at which these activities were discussed.  Rather than consulting these primary sources, the ALJ appears to have relied upon Dr. Ferguson's second-hand description of the documents.  Although such a mistake would (hopefully) be harmless in many instances (assuming that most Social Security consultants accurately relate the evidence in the record), it was extremely damaging here.

In essence, Dr. Ferguson took a series of Plaintiff's statements in which he suggested that he did various activities when his impairments allowed him to, and twisted them into admissions that his ability to perform the activities was unhindered by his conditions.  For instance, Ms. Flores reported that Plaintiff "trie[d] to attend church if his back allows," that he similarly "trie[d] to take [the] trash out," to move around the house, and to walk for exercise, that he "prepare[d] small meals when he is able to,"and that he fed his "pets when he is able to get up [and] move around."  Tr. 150-54.  In Dr. Ferguson's account, these responses somehow became concessions from Plaintiff that he was "able to prepare meals,

24

attend church and care for his dogs." Tr. 304.  The ALJ accepted and exacerbated this flawed interpretation, adding that Plaintiff had also admitted that he routinely walked for exercise and moved about the house.  Tr. 47.

Strikingly, the only self-reported activity that the ALJ accurately described was Plaintiff's television-watching, a capacity that hardly suggests, standing alone, employability.  See, e.g., Pickens v. Astrue, No. 07-CV-2240, 2009 WL 2914172, at *7, 9 (W.D. La. Sept. 10, 2009) (unpublished) (awarding disability benefits to plaintiff who spent much of his time watching television); McAdams v. Astrue, No. 07-1404, 2009 WL 33050, at *6 (D. Kan. Jan. 6, 2009) (unpublished) ("Plaintiff's ability to ... watch television ... does not provide substantial evidence to support the ALJ's finding that" he was not entitled to benefits).

Furthermore, the ALJ's misstatement of the record is even more glaring in light of Plaintiff's other assertions on his Social Security forms, as they uniformly and consistently claimed the very limitations that the ALJ thought he admitted to not having.  See Tr. 121 (Plaintiff noting that he had difficulty with personal needs and everyday activities, and that his family cooked for him); Tr. 127 (Plaintiff complaining that his physical impairments limited his ability to walk).

Accordingly, it is respectfully recommended that the ALJ made an unreasonable determination regarding Plaintiff's credibility.

**B.     The RFC Assessment And Hypothetical Question Were In Error.**

Defendant argues that the hypothetical question and Ms. Johnson's response were proper.  (D.E. 14-1, at 10-11).  Plaintiff contends that the question was flawed because it imagined only occasional use of a cane, and that Ms. Johnson then relied upon that error in formulating her list of proposed jobs.  (D.E. 15, at 15-16).  He similarly complains that the record indicated that he "was unable sit [sic] or stand for any length of time," and that Ms. Johnson erroneously proposed jobs that would require some standing and extensive sitting.  Id.  Defendant responds that the restrictions Plaintiff complains should have been included were supported only by his own assertions, not by medical evidence, and that the ALJ therefore had no obligation to incorporate them.  (D.E. 16, at 10-11).

The parties respective positions on the hypothetical question are each partly meritorious and partly unpersuasive.  First, Plaintiff's critique of the question's lack of sitting restrictions is unjustified.  As Defendant aptly remarks, the argument is based entirely on the notes of a Social Security interviewer describing Plaintiff's behavior during an interview.  (D.E. 15, at 16 n.9) (citing Tr. 110).  The interviewer commented that Plaintiff "complained about his pain and asked if he could stand up. [Plaintiff] stood up several times during interview."  Tr. 110.  These comments do not constitute a medical analysis, they merely recount Plaintiff's actions.  Nor is there even any indication that the interviewer himself

26

believed Plaintiff was unable to sit.  Plaintiff's lone citation for his argument regarding the sitting restrictions is plainly insufficient to make his case, and the hypothetical question was therefore not flawed in this respect.  See Masterson, 309 F.3d at 273 (ALJ is only required to incorporate limitations supported by the record into a hypothetical question) (citation omitted).

On the other hand, Plaintiff's complaints regarding his cane usage are valid. In the ALJ's hypothetical question, he asked Ms. Johnson to envision vocations with "no limits regarding the sitting activities" and "occasional cane use."  Tr. 30. Plaintiff cites numerous documents in the record wherein medical personnel noted that he required the use of a cane to walk.  (D.E. 15, at 15) (citing Tr. 28, 112, 162, 165, 229, 234, 239, 240, 246, 312, 316, 342, 354, 360).  Contrary to Defendant's suggestion, many of these observations are found not in Plaintiff's own statements, but in those of various examining doctors.  Id.  Consequently, it was error for the ALJ to incorporate, without explanation, an only occasional need for an assistive walking device into his hypothetical question.  See Morris v. Bowen, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam) (ALJ must incorporate limitations supported by the record into a hypothetical question).

Although neither party addresses the issue head-on, the more fundamental defect in the hypothetical question relates back to Dr. Ferguson's inaccurate account of Plaintiff's statements and the problematic dismissal of his credibility.

27

The ALJ explicitly calculated Plaintiff's RFC with reference to the adverse credibility finding, and plainly relied heavily on Dr. Ferguson's opinion as well. Tr. 45.  As a result, Dr. Ferguson's error was doubly damaging to the hypothetical question, generating the unfavorable credibility determination (which in turn helped shape the RFC and hypothetical question by resulting in the dismissal of Plaintiff's allegations) and more directly providing a factually-flawed basis for the limitations incorporated into the RFC and question themselves.  As a result, the entire question rested on a shaky foundation, and the answer cannot support the denial of benefits.

Accordingly, it is respectfully recommended that the question was in error, and that the ALJ improperly relied upon the answer.

## C.    The ALJ Did Not Improperly Reject Medical Evidence.

Plaintiff asserts that the ALJ improperly weighed the medical evidence. (D.E. 15, at 19-20).  In particular, he faults the ALJ for privileging the opinions of non-examining physicians over those of treating doctors, without adequate grounds or explanation.  Id.

Social Security regulations require that the ALJ show good cause for rejecting a medical opinion.  20 C.F.R. § 404.1527(d); Loza, 219 F.3d at 395 (citations omitted).  An ALJ may not arbitrarily ignore uncontroverted medical evidence.  Goodley v. Harris, 608 F.2d 234, 236-37 (5th Cir. 1979) (citation

28

omitted).  The Fifth Circuit has explained that "absent reliable medical evidence

from a treating or examining physician controverting the claimant's treating

specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ

performs a detailed analysis of the treating physician's views under the criteria set

forth in 20 C.F.R. § 404.1527(d)(2)."  Newton v. Apfel, 209 F.3d 448, 453 (5th

Cir. 2000) (emphasis in original), overruled in part on other grounds by implication

in Sims v. Apfel, 530 U.S. 103 (2000).  These criteria include:

> (1) the physician's length of treatment of the claimant;
>
> (2) the physician's frequency of examination;
>
> (3) the nature and extent of the treatment relationship;
>
> (4) the support of the physician's opinion afforded by the
> medical evidence of record;
>
> (5) the consistency of the opinion with the record as a
> whole; and
>
> (6) the specialization of the treating physician.

Id. at 456 (citing 20 C.F.R. § 404.1527(d)(2)).  Even when a treating physician's

opinion does not meet the test for controlling weight, it is still entitled to deference.

Id. (citation omitted).  In rejecting the opinion of a treating physician, or affording

it little weight, an ALJ must consider each and every one of these six criteria.  Id.

(citations omitted).  Failure to do so warrants remand of the case so that the

analysis may be conducted.  See id.

Plaintiff urges that the ALJ here "gave improper weight to the RFC findings of non-examing [sic] professional [sic]" and conversely improperly discounted the views expressed in Plaintiff's "treating physician's physician's [sic] opinions and medical findings."  (D.E. 15, at 20).  He does not specify the identity of the non-examining professionals, nor of the treating physicians.  Presumably, the former is intended to refer to Doctors Decherd, Lazarus, and Ferguson, as they were the non-examining professionals whose views most strongly influenced the ALJ's decision.  There is no reason to doubt the conclusions of the first two.  Moreover, while it is true that Dr. Ferguson's report contained the inaccurate recitation of Plaintiff's assertions, Plaintiff fails to show, or even to adequately locate, the opinions that the ALJ improperly dismissed.  No medical report contained in the record reflects a doctor's conclusion that Plaintiff was unable to work.  In order to improperly privilege one medical report over another, as Plaintiff alleges, there must of course be a discounted report, and he fails to indicate what it is here.

Accordingly, it is respectfully recommended that the ALJ did not improperly reject medical evidence.

**D.     The ALJ Did Not Fail To Develop The Record To Resolve Inconsistent Evidence.**

Plaintiff accuses the ALJ of failing to properly reconcile inconsistencies in the record, suggesting that the medical evidence regarding his ability to work with his hip problem was conflicted and weighed toward a finding of disability.  (D.E. 15, at 8-11).  He insists that the ALJ had a duty to resolve these conflicts by further developing the record.

An ALJ owes "a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." Ripley v. Chater, 67 F.3d 552, 557 (5th Cir. 1995) (citations omitted).  If he fails to do so, the decision cannot be regarded as substantially justified.  Id. (citations omitted).

As with Plaintiff's argument regarding the ALJ's alleged failure to explain his rejection of medical evidence, his claim that the ALJ failed to adequately develop the record is insufficiently supported.  Although he recites various specific phrases that appear in medical reports and blames the ALJ for omitting them from his analysis, he had no duty to provide an exhaustive, verbatim list of doctors' quotes.  (D.E. 15, at 18-19).  Rather, his duty was simply "to develop the facts fully and fairly relating to" Plaintiff's application.  Ripley, 67 F.3d at 557. This he did. In widely canvassing the record and articulating a broad overview of the medical record, the ALJ satisfied his duty.  Plaintiff does not demonstrate that any of the

31

excerpted medical notes represented genuine conflicts of evidence that required

resolution, as he does not show that any of them indicated that Plaintiff's

impairments foreclosed the possibility of gainful employment.  The ALJ

reasonably determined that the reports could be reconciled, and that in conjunction

they did not establish a disability.

Accordingly, it is respectfully recommended that the ALJ did not fail to

develop the record to resolve inconsistent evidence.

**E.      The ALJ's Errors Were Not Harmless.**

The Fifth Circuit has determined that district courts reviewing denials must

apply a harmless error analysis.  Audler v. Astrue, 501 F.3d 446, 448 (5th Cir.

2007) ("Having determined that the ALJ erred in failing to state any reason for her

adverse determination at step 3, we must still determine whether this error was

harmless.") (citation omitted).  The Audler court further explained that

"'[p]rocedural perfection in administrative proceedings is not required' as long as

'the substantial rights of a party have not been affected.'"  Id. (quoting Mays v.

Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)).

In electing not to dispute the error concerning the misstatement of Plaintiff's

self-reporting, and instead arguing that the factual misunderstandings underlying

that error were not crucial to the ALJ's ultimate conclusions, Defendant

effectively, and reasonably, concedes the error.  (D.E. 16, at 8-10).  Nevertheless,

his argument for its harmlessness is unpersuasive.  The purported history of

inconsistent statements was plainly the most damning piece of evidence regarding

Plaintiff's credibility.  For one thing, it was the only cited reason that went directly,

rather than obliquely, to the question of credibility.  For another, and more

importantly, it was the only cited reason that spoke to Plaintiff's credibility with

respect to <u>all</u> of his alleged impairments.  The ALJ's other main basis for

discounting Plaintiff's credibility involved his back.  In particular, he cited Plaintiff

reporting positive effects from using Flexeril for his lumbar problems and relating

that his back condition was not severe enough to warrant surgery.  Tr. 45.

Although these observations were both true, they say nothing about Plaintiff's hip

problems, which were clearly the focal point of his application for benefits.  In this

respect, it is particularly noteworthy that the ALJ placed such emphasis on the lack

of need for back surgery, when the most recent doctor to examine Plaintiff's hip

recommended a complete replacement.  Tr. 342.

　　　At any rate, it would be a stretch to regard the statements concerning the

Flexeril and the back surgery as even having that much bearing on the extent of

Plaintiff's back problems.  A person can have some success with a drug, or cannot

require surgery, and yet still suffer from a disabling condition.  <u>See</u> <u>Jacobs v.</u>

Astrue, No. 08-431, 2009 WL 161832, at *18 (D. Minn. Jan. 22, 2009)

(unpublished) (evidence of some medical improvement insufficient to demonstrate

lack of credibility where there is reason to suspect a more complex credibility

issue).

In fact, the supposed discrepancy in Plaintiff's self-reporting was the only

link between the back issues and his overall credibility.  Disability within the

meaning of the Social Security Act is about the <u>combined</u> effect of the claimant's

impairments.  See Loza, 219 F.3d at 390 (citations omitted).  Plaintiff's limited

success in ameliorating his back pain would only bear on his credibility if there

were grounds to suppose that the back pain, in conjunction with his other alleged

impairments, did not prevent him from working.  The only such grounds were

Plaintiff's allegedly inconsistent statements.[6]  Because the statements were not in

---

[6] The ALJ also remarked in his ruling on Plaintiff's "poor work history" and non-compliance with prescribed treatment.  Tr. 46-47.  These explanations cannot be regarded as independent and adequate grounds for writing off Plaintiff's credibility.  First, the ALJ assumed that low wages indicate "poor work history," when the length and continuity of employment are plainly a better indicator for purposes of credibility, both of which redounded in Plaintiff's favor.  See Tr. 24-25 (Plaintiff noting that he worked for twenty-seven years as a barber); see also Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979) (testimony of claimant with twenty-nine years of continuous employment, fifteen with the same employer, entitled to favorable credibility determination).  Second, though poor work history can damage a claimant's credibility, see Ruling 96-7p, 1996 WL 374186, at *5, there are no cases in which that factor, in concert only with minimal evidence showing slight improvement with respect to one of several alleged impairments, sufficiently supported a negative credibility finding.  Lastly, while non-compliance can properly count against credibility, see Johnson v. Sullivan, 894 F.2d 683, 685 n.4 (5th Cir. 1990) (citing 20 C.F.R. § 404.1530(a), (b)), the occasional sign of disobedience toward medical orders contained in this record do not support the adverse credibility finding.  They are not only few and far between, they also appear to have only limited relevance to

34

fact inconsistent, the entire justification for dismissing his credibility is unsupported by <u>any</u> evidence, let alone substantial evidence.  Furthermore, the ALJ's credibility assessment undergirds many of his other crucial findings, including his RFC determination.  The RFC determination in turn provided the basis for the hypothetical question, and the vocational expert's answer provided the basis for the ALJ's ultimate conclusion.  As a result, it is respectfully recommended that the error regarding Plaintiff's credibility cannot be considered harmless.

**F.    Reversal Is Not Appropriate.**

Plaintiff requests that the Court reverse the Commissioner's decision and enter judgment that Plaintiff is entitled to benefits.  (D.E. 15, at 20).  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Nevertheless, the Fifth Circuit has held an immediate award of benefits is precluded where "the record contains inconsistencies and unresolved issues."

---

Plaintiff's most disabling impairment, his hip.  If he does in fact need a total hip replacement, as Dr. Collie recommended on November 25, 2009, Tr. 342, then following the prescribed treatment would presumably be of only limited utility.  In any event, regardless of the validity of the ALJ's conclusion regarding non-compliance, his own opinion suggests that his erroneous understanding of Plaintiff's self-reporting was central to his credibility finding, and it would therefore not be proper to assume away that evident reliance.

Beaumont v. Barnhart, 81 F. App'x 839, 839 (5th Cir. 2003) (per curiam) (unpublished) ("Conflicts in the evidence are for the Commissioner and not the courts to resolve.") (quoting Newton, 209 F.3d at 452).

Here, Plaintiff points to various unresolved issues and inconsistencies. Thus, the proper resolution of Plaintiff's claim requires a new assessment of his credibility in light of an accurate understanding of his self-reported limitations, a new RFC calculation in light of that assessment, and a new hypothetical question in light of that calculation. Because determinations of credibility are for ALJs in the first instance, see Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991) (per curiam) (citation omitted), a remand is therefore required.

Accordingly, it is respectfully recommended that the Court not immediately award benefits, and that the case be remanded for further proceedings.

## V. <u>RECOMMENDATION</u>

For the reasons stated herein, it is respectfully recommended that Plaintiff's motion for summary judgment, (D.E. 15), be granted with respect to his claims regarding the credibility assessment, the RFC calculation, and the hypothetical question, and denied in all other respects. It is further respectfully recommended that Defendant's motion for summary judgment, (D.E. 14), be granted with respect to the ALJ's development of the record and weighing of the medical evidence, and

denied in all other respects.  Finally, it is respectfully recommended that this action be remanded to the Social Security Administration for further proceedings in accordance with the memorandum and recommendation.

Respectfully submitted this 28th day of July 2011.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).